UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| DAVID J. STRANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 5:14-cv-60-JMH |
| | ) | |
| STRYKER SALES CORPORATION, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*

This matter is before the Court upon Defendant Stryker Sales Corporation's Motion for Summary Judgment. [DE 17]. Plaintiff David J. Strange has filed a response, [DE 19], and Defendant has filed a reply. [DE 22]. In addition, Defendant Stryker has filed a Motion to Strike Exhibit 17 of Plaintiff's Response, [DE 24], to which Plaintiff has responded, [DE 25], and Defendant has replied. [DE 26]. The Court being otherwise sufficiently advised, the matter is now ripe for the Court's review.

**I. Background**

Plaintiff David J. Strange began his employment with Defendant Stryker Sales Corporation on November 17, 2008. By March, 2013, Plaintiff had relocated at Defendant's request from Tennessee to Kentucky and had been promoted three times,

ultimately to the position of Senior Field Service Technician in the East Region. [DE 18 at ¶ 1-7]. For the majority of his time at Stryker, Strange was directly supervised by Bryan Vaughn, and Vaughn was supervised by Amanda White, the Regional Integration Services Manager. [DE 18 at ¶ 9-10].

Strange's claims against Defendant are based primarily on four incidents, the first of which took place in October, 2012. Strange, Vaughn, and one of Strange's co-workers, Charles Dabit, participated in a conference call regarding Dabit's recent problems at work. At some point during this call Dabit said: "I'm not going to be doing this (the job of a Field Service Technician) when I'm Dave's age. He's too old to be doing this job." [Strange Deposition Transcript, DE 17-3 at 9; Vaughn Deposition Transcript, DE 17-7 at 9; DE 18 at ¶ 13]. White avers that she later spoke to Dabit about the impropriety of his comment. [DE 18 at ¶ 13]. Plaintiff does not agree or disagree that this occurred; simply stating that he has no knowledge of the fact. [DE 19-2 at ¶ 13].

In April or May of 2013, Strange informed Vaughn and White that he was having issues with bruising on the backs of his legs. The parties do not dispute that Strange did not receive medical treatment other than his doctor's recommendation for occasional exercise. Strange also did not ask for nor require an accommodation for the bruising, other than to ask Vaughn to

2

cover some service in Ohio to avoid long drives, which Vaughn did. [DE 18 at ¶ 15-18].

On June 3, 2013, Plaintiff participated in a conference call with Vaughn and other Field Service Technicians. White was on the call but did not announce herself. During the call, Plaintiff called a particular piece of equipment a "piece of shit" and used the word "retarded."[1] [DE 18 at ¶ 20; DE 19-2 at ¶ 20]. White later emailed Vaughn about these comments and instructed him to give Strange a verbal warning with a written follow-up. Strange apologized to the team during the next call a week later. [DE 18 at ¶ 21-22].

Around this time, in June 2013, White and Vaughn initiated discussions with Strange about whether he might be willing to move to Ohio. [Plaintiff's Depo, DE 17-3 at 64]. On June 19, 2013, Amanda White received an email from a Stryker salesperson complimenting Strange's good work in Kentucky and stating that Strange's time spent in Ohio, rather than in Kentucky, was not good for business. [DE 17-3 at 36]. White emailed Strange, stating "please stop petitioning your sales partners to send me these types of emails" and "it's also clear that you have shared an inappropriate amount of detail with them." Finally, White

---

[1] The parties dispute the precise details as to the context in which this word was uttered or characterized, but all agree that it was used. [DE 19-2 at ¶ 20; DE 20-6 at 1; 23-1 at 3, ¶ 8]

advised, "If you do not want to move to Ohio, please just tell me or Bryan [Vaughn]." [DE 17-8 at 35].

In response, Plaintiff asked that the Human Resources Department be involved. [DE 17-8 at 35]. The Director of Human Resources initiated an investigation the next day, June 20, 2013, based on Plaintiff's complaints that people were not being held to the same standards for the same issues and that he was being treated differently because of his age and after he had notified his supervisors of the bruising on his legs. [DE 17-6 at 3; DE 17-8 at 41]. The Director concluded the investigation on July 11, 2013, finding that the issues that Plaintiff was concerned about had been handled appropriately but that there were some things that his supervisors could have done differently. [DE 18 at ¶ 23; 17-8, 41-56].

Also in the summer of 2013, Stryker's National Integrations Services Manager, Sujal Patel, conducted a study on the amount of work completed by Field Service Technicians in each region "in order to determine whether that technician lived in a location most conducive to enhancing productivity and customer needs." [DE 17-9 at ¶ 2; DE 18 at ¶ 25-26]. Notably, Plaintiff does not deny that this study exists, but state that he was not aware of it. [DE 19-2 at ¶ 25, 26]. Plaintiff was one of two employees identified, having worked more in Ohio than in Kentucky where he lived. Subsequently, on October 2, 2013, Patel

4

asked Plaintiff to move to Ohio. When he declined, his position was terminated, effective October 18, 2013. [DE 20-13].

Defendant avers that Plaintiff was terminated because Defendant made a business decision to eliminate his position and because he chose not to relocate to Ohio. Strange contends that his dismissal was because of his age, because he was regarded as disabled, and as a result of unlawful retaliation for filing the complaint with HR.

## II. Motion to Strike

As an initial matter, Defendant moves to strike Exhibit 17, [DE 21 and 21-1], attached to Plaintiff's Response to the Motion for Summary Judgment. Exhibit 17 is a transcript of a recording of a telephone call between Sara Briggs, the Director of the Human Resources Department at Stryker, and the plaintiff on June 24, 2013.

Plaintiff received a request for production after this suit commenced for "all documents" relating to communications between Plaintiff and Defendant. However, the discovery deadline set by this Court's scheduling order passed on November 28, 2014, without Plaintiff having alerted Defendant to the existence of this transcript and recording. [DE 7]. On December 15, 2014, Plaintiff amended its answers to Defendant's interrogatories to notify them of the existence of the recording and the transcript. [DE 26-1].

Plaintiff argues that Exhibit 17 should not be stricken from the record because the discovery deadline was extended and because Plaintiff produced the exhibit when he "realized it existed." [DE 25]. First, Plaintiff is incorrect as to the extension, the Court granted the parties' motion to hold a deposition after the deadline but very clearly did not extend the deadline for any other reason. [DE 16]. Second, Plaintiff's affidavit attempting to authenticate the transcript confirms that Plaintiff was present for the call, and Plaintiff does not suggest that he somehow did not know that the call was being recorded on his end. Thus, it is clear that the Plaintiff knew of the existence of the recording in June, 2013, and, therefore, his failure to produce it by November 28, 2014, cannot be excused based on a lack of knowledge of its existence. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

Moreover, Defendants are prejudiced to some extent, having learned of the recording and transcript one month before dispositive motions were due but after almost a year of litigation. Plaintiff, on the other hand, does not utilize Exhibit 17 for any material fact or in support of any argument, citing to the transcript once in support of a proposition that is easily established by other documents and undisputed, [DE 19 at 11], and a second time in his statement of material facts,

6

for details that are irrelevant to this Court's analysis. [DE 19-2 at ¶ 24].

Accordingly, the Court will grant Defendant's motion to strike and not rely upon Exhibit 17, [DE 21 and 21-1], in the summary judgment determination below.

## III. Summary Judgment

### A. Standard of Review

A motion for summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Analysis

#### 1. Disability Discrimination

Plaintiff alleges disability discrimination in violation of the Kentucky Civil Rights Act, KRS §§ 344.040. The Kentucky

7

Supreme Court has interpreted the Act "consistent with the applicable federal anti-discrimination laws" and applies the familiar *McDonnell Douglas* burden-shifting test in cases such as this, in which the plaintiff has failed to provide direct evidence of discrimination. *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).

Under the burden-shifting framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. If he is successful, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory explanation for its employment decision. *Id*. Once the defendant offers its explanation, the burden shifts back to Plaintiff to show that the defendant's explanation was mere pretext for discrimination. *Id*. at 804.

Here, Defendant argues that Plaintiff cannot establish a prima facie case of disability discrimination. To do so, Plaintiff must show "(1) that he had a disability ...(2) that he was 'otherwise qualified' to perform the requirements of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment decision...." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706-07 (Ky. Ct. App. 2004).

Defendant contends that Plaintiff cannot establish the third prong because the two verbal reprimands he received after

8

he informed Defendant of the bruising on his leg do not constitute adverse employment actions. *See Zanders v. Potter*, 223 F. App'x 470 (6th Cir. 2007) (affirming summary judgment and concluding written warning placed in employee file did not constitute an adverse employment action). However, Plaintiff's termination constitutes an adverse employment action. Defendant suggests that Plaintiff was not terminated because he "chose not to relocate to Ohio, a choice that subjected him to a reduction in force." [DE 17-1 at 23]. Viewing the record in the light most favorable to the Plaintiff, however, it indicates that he would not have left Stryker if not asked to move and, thus, his leaving was not voluntary and he suffered a material change in circumstances as a result. His termination, even as part of Defendant's reduction in force, thus constitutes an adverse employment action. *See Johnson v. Franklin Farmers Co-op.*, 378 F. App'x 505, 508-09 (6th Cir. 2010). Defendant does not dispute that Plaintiff was qualified for the position, leaving the first prong of Plaintiff's prima facie case.

Defendant argues that Plaintiff cannot prove that he is "disabled" under the first prong. There are three avenues by which a plaintiff may do so. KRS § 344.010(4). Plaintiff seeks to show he is disabled using the third avenue only, by showing he was "regarded as" disabled by his employer. *Id.*; [DE 19 at 7, n.1].

At the outset, Plaintiff urges the Court to take into account the recent amendments to the ADA under the Americans with Disabilities Act Amendment Act, which broadened the scope of what is considered "regarded as" disabled. *Milholland v. Sumner County Bd. of Educ.,* 569 F.3d 562, 567 (6th Cir. 2009). The events in this case took place after the amendments took effect in 2009, *See Milholland* 569 F.3d at 567, and Kentucky courts regularly look to federal case law interpreting the ADA when analyzing disability discrimination claims under the KCRA. *See Hallahan*, 138 S.W.3d at 705. However, Kentucky courts have not yet addressed how the amendments to the ADA affect a KCRA disability discrimination analysis, nor has the Kentucky legislature amended the KCRA as Congress did to broaden the scope of what is meant by "regarded as." Notably, if Plaintiff sought the expanded protection under the amended ADA, he could have brought a claim under that statute. Accordingly, the Court will construe Plaintiff's state law claim based on the analysis used by Kentucky courts, which look to the approach taken by federal courts *before* the ADA amendments took effect.

In order to show he was "regarded as" disabled, Plaintiff must show that Defendant "mistakenly believes that [Plaintiff] has a physical impairment that substantially limits one or more major life activities, or (2) ... mistakenly believes that an actual, non-limiting impairment substantially limits one or more

10

major life activities." *Hallahan*, 138 S.W.3d at 707. Although Plaintiff states that Defendant perceived him as disabled in certain life activities, he does not identify any fact from which the Court could infer such a conclusion. Indeed, on the record before the Court, there is no evidence indicating that Defendant was concerned about Plaintiff's bruising, and Defendant did not change Plaintiff's responsibilities or workload, did not deny him a promotion or position shift. In sum, there are no facts from which the Court could infer that Defendant perceived Plaintiff as substantially limited. *Compare Hallahan*, 138 S.W.3d at 707-13 (concluding the plaintiff presented insufficient evidence to support a "regarded as" claim because he could not show employer believed him precluded from a broad class of jobs); *with Ross v. Campbell Soup Co.*, 237 F.3d 701, 707 (6th Cir. 2001) (finding Plaintiff could show he was "regarded as" disabled where memo identified him as a "problem person" because of a back problem and considered terminating him).

Decidedly, the Sixth Circuit has discussed the unique challenge of proving a "regarded as" claim, noting that such a determination is rarely appropriate at the summary judgment stage. *Ross,* 237 F.3d at 706-08. Here, however, even assuming Plaintiff could prove a prima facie case, he could not sustain his burden at the pretext stage.

Defendant offers as its legitimate non-discriminatory reason that it conducted an analysis that identified two employees across the company who were working more outside the state in which they lived, which was generating higher and unnecessary expense. For business reasons, therefore, Defendant avers that it asked both employees, one of whom was the plaintiff, to move or be subject to a reduction in force. [DE 17-9]. Importantly, Plaintiff appears to disagree with the existence of this study, but only states that he was not aware of it. However, Plaintiff cites to no part of the record in support nor does he attempt to show how Patel's affidavit, which supports this claim, presents a genuine dispute as to this fact. *See* Fed. R. Civ. P. 56(a). The Court finds that Plaintiff has not raised a genuine dispute as to this fact. *See Ford v. Gen. Motors Corp.*, 305 F.3d 545, 552 (6th Cir. 2002) ([T]he non-moving party may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial.")(citation and quotation omitted). Defendant has satisfied its burden to show a legitimate non-discriminatory reasons for Plaintiff's termination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) ("The burden is one of production, not persuasion; it 'can involve no credibility assessment.'") (citation omitted).

The burden shifts to Plaintiff "to demonstrate at least a genuine dispute of fact over whether [Defendant's] proffered explanations for its adverse employment decision were pretexts." *Wheat v. Fifth Third Bank*, No. 13-4199, 2015 WL 2116129, at *9 (6th Cir. May 7, 2015). Plaintiff argues that Defendant's reason is pretext because Plaintiff was given a little less than forty-eight hours to decide whether he would be willing to relocate or be terminated. This, Plaintiff argues, shows that the move was presented in a manner that assured Plaintiff would not accept it. The parties actually dispute how long Plaintiff was given to decide; Defendant argues that Plaintiff was given up to five days. [DE 19 at 9; 17-9 at ¶ 9].

Regardless, even assuming Patel only gave Plaintiff forty-eight hours to decide, this does not overcome Defendant's proferred reason. This is because Plaintiff ignores the undisputed fact that his supervisors suggested the move to Ohio as early as June, 2013. [DE 17-3 at 64-65]. The record also includes emails from Plaintiff's supervisor in June, complementing his good work and expressing that she hoped he would continue his employ with Stryker in Ohio, and that his work would be valued there. [DE 17-8 at 22-24]. Having at least been aware of a potential move to Ohio since June, this weighs against Plaintiff's argument that Patel's deadline essentially caught him by surprise. Furthermore, this evidence does not show

13

that Stryker's business concerns in saving costs did not actually motivate its decision to eliminate Plaintiff's position in Kentucky.

To show that the work force reduction did not actually motivate Plaintiff's termination, as Plaintiff attempts to do with this argument, Plaintiff must show that "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008); *see also Green v. Township of Addison*, No. 14-1607 (6th Cir. May 15, 2015). Plaintiff has not done so here and, accordingly, his disability discrimination claim must fail. Defendants are thus entitled to summary judgment on this claim.

### 2. Retaliation

Plaintiff alleges that he was retaliated against when he complained to Stryker's Human Resources Department, a violation of the Kentucky Civil Rights Act. KRS § 344.280. As a claim under the KCRA, Kentucky courts approach retaliation in a similar manner to a disability discrimination claim, discussed above, looking to federal courts analyzing retaliation claims and utilizing the *McDonnell Douglas* burden-shifting test. *See Williams*, 184 S.W.3d at 495.

Defendant first argues that Plaintiff cannot establish a prima facie case of retaliation. When based on circumstantial

14

evidence, as Plaintiff's retaliation claim is here, a plaintiff must show that (1) he engaged in a protected activity, (2) his employer knew that he had engaged in said activity, (3) after the protected activity, his employer took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004).

Defendant attacks Plaintiff's ability to prove an adverse action first. Plaintiff responds that there were two adverse actions: the June 19, 2013, email from Amanda White (in which White accused Plaintiff of soliciting comments to encourage his stay in Kentucky), and his termination. While the email, which appears to have been the impetus for Plaintiff's complaint and was sent before it, cannot suffice as an adverse action, Plaintiff's termination does. *See supra*, Part III.A. The Court, thus, finds that Plaintiff can establish the third prong and Defendant does not dispute the first and second. This leaves the fourth prong in dispute, as to whether Plaintiff has established a causal connection between his complaint to HR and his termination.

In support of a causal connection, Plaintiff notes that only four months elapsed between his filing of this complaint with HR and his termination. However, while close temporal

proximity can, on its own, establish a causal connection, this is appropriate when the adverse action occurred only days or several weeks after the protected activity. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523-26 (6th Cir. 2008) (collecting cases). Here, where four months elapsed, Plaintiff must provide additional evidence to establish a causal connection. Thus, Plaintiff also contends that a causal connection is shown by the fact that the manager who actually terminated Plaintiff's employment, Sujal Patel, was Amanda White's boss. White was, of course, Plaintiff's supervisor and was closely involved in his complaint to HR. This argument supports the second prong as to Defendant's knowledge of the complaint, but is unpersuasive in establishing an inference that Plaintiff's termination was motivated by the HR complaint. Accordingly, Plaintiff cannot meet his burden at the prima facie stage and Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

### 3. Age Discrimination

Plaintiff's Complaint also asserts age discrimination in violation of KRS § 344.040. Plaintiff has failed to respond to Defendant's motion for summary judgment on this claim. Regardless, the fact that Plaintiff has failed to respond does not change the fact that Defendant bears the initial burden on summary judgment. Fed. R. Civ. P. 56(a); *Delphi Auto. Sys., LLC*

*v. United Plastics, Inc.*, 418 F. App'x 374, 380 (6th Cir. 2011) (citing *Carver v. Bunch,* 946 F.2d 451, 454-55 (6th Cir. 1991)). "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Delphi*, 418 F. App'x at 380.

Where, as here, the plaintiff fails to present direct evidence of age discrimination, the Court analyzes an age discrimination claim using the *McDonnell Douglas* burden-shifting framework discussed above. *Williams*, 184 S.W.3d at 495. For his prima facie case, a plaintiff must establish 1) that he is 40 years or older; 2) that he was subject to an adverse employment action; 3) that he was qualified for the position; 4) that he was replaced by someone outside of the protected class. *Geiger v. Tower Auto.,* 579 F.3d 614, 622-23 (6th Cir. 2009) (internal citation and quotation omitted); *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). Here, however, Defendant contends that this is a work force reduction case, which modifies Plaintiff's prima facie burden. The Court agrees because the record reflects that Plaintiff's positon was eliminated, he was not replaced. *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). According, the fourth element of the prima facie case is modified to require the plaintiff to provide additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the

17

plaintiff for discharge for impermissible reasons. *Geiger*, 579 F.3d at 622-23.

Defendant argues that Plaintiff cannot establish this fourth prong. Defendant repeats its argument that its decision o terminate Plaintiff was motivated by business concerns, and argues that there is no evidence that Plaintiff's termination was motivated by his age. The Court agrees that there is no evidence on the record before it to support an inference that Plaintiff was singled out because of his age. Accordingly, Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

### 4. Hostile Work Environment

Plaintiff's Complaint alleges that "he was exposed to a pervasive, hostile work environment because of his age and because he was regarded as disabled" in violation of the Kentucky Civil Rights Act. KRS 344.040; [DE 1]. Again, Defendant moves for summary judgment on this claim and Plaintiff fails to respond. This does not discharge Defendant's initial burden, however, and the Court will examine Defendant's motion accordingly. *Delphi Auto. Sys., LLC*, 418 F. App'x at 380.

As with the other KCRA claims, this hostile work environment claim is analyzed like similar federal claims under the *McDonnell Douglas* framework. *See Ammerman v. Bd. of Educ., of Nicholas Cnty.*, 30 S.W.3d 793, 797-98 (Ky. 2000). To prove

his prima facie case, Plaintiff must demonstrate five elements: (1) he was a member of the protected class (disabled or 40 years or older); (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected class; (4) "the harassment unreasonably interfered with his work performance;" and (5) "defendant either knew or should have known about the harassment and failed to take corrective measures." *Spence v. Donahoe*, 515 F. App'x 561, 571 (6th Cir. 2013); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996).

Defendant argues that Strange cannot sustain his prima facie burden because there are no facts to connect Plaintiff's membership in the protected classes with the actions taken by his employer and because the harassment, if any, was not sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive working environment.

Although Plaintiff does not respond or argue against dismissal of this claim, in his statement of facts he notes the sequence of events that occurred after Dabit's comment about his age in October, 2012, and after Plaintiff notified his supervisors of the bruising in his legs in April, 2013: he was reprimanded after using the word "retarded" on a conference call and for soliciting reviews by salespeople, both in June, 2013, and eventually terminated in October, 2013. [DE 19-2].

19

First, the hostile work environment claim based on disability. Assuming Plaintiff could show that he was disabled for the first prong, and even if this sequence of events is enough to infer a causal connection between his disability and Defendant's action, this evidence does not show that Plaintiff was subject to an environment reasonably perceived to be hostile or abusive as required for the fourth prong of a hostile work environment claim. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-23 (1993) (discussing what constitutes harassment in the context of a hostile work environment).

Second, and similarly, the hostile work environment claim based on age. For the third prong, the causal connection between Dabit's comment about Plaintiff's age is even more attenuated. The comment occurred a whole eight months before any potentially harassing behavior (the reprimands and the termination) on the part of the Defendant, and even then, these adverse actions were taken by Plaintiff's supervisors, whereas the comment was made by Plaintiff's co-worker. Even still, neither Dabit's one-time comment, although offensive to Plaintiff, nor the other actions taken by Defendant beginning in June of 2013 rise to the level of the type of conduct typically considered by courts to be harassment to satisfy the fourth prong of a hostile work environment claim. *Id.* at 21 (noting the determination of

whether conduct constitutes harassment has an objective and subjective component).

Accordingly, the Court finds that Defendant has shown that Plaintiff cannot sustain a prima facie case of a hostile work environment. Defendant has, thus, sustained it initial burden and is entitled to summary judgment on this claim.

### 5. Breach of Contract

Plaintiff's Complaint alleges Defendant breached its contract with Plaintiff when it refused to pay Plaintiff's final, company-related expenses. Defendant moved to dismiss this claim as a part of its motion for summary judgment. In an affidavit attached to his response, Plaintiff states, "the dispute concerning Stryker not paying my business expenses has been resolved and I no longer need to pursue a breach of contract claim." [DE 19-1 at ¶ 5]. Accordingly, this claim is dismissed as withdrawn.

### 6. Intentional Infliction of Emotional Distress

Plaintiff's Complaint alleges "he suffered extreme emotional distress when Defendant intentionally and maliciously engaged in extreme and outrageous conduct, including its refusal to pay his final expenses unless he signed a severance agreement." [DE 1]. The Kentucky Civil Rights Act preempts a common law intentional infliction of emotional distress claim. *Kroger Co. v. Buckley*, 113 S.W.3d 644, 647 (Ky. Ct. App. 2003).

Thus, to the extent Plaintiff's claim is based on his allegations of age and disability discrimination, hostile work environment, and retaliation under that Act, his IIED claim is preempted and must be dismissed. To the extent that his IIED claim is based on the sole remaining claim, his claim for breach of contract, it will be dismissed because Plaintiff has withdrawn that claim.

## IV. Conclusion

For all the reasons set forth above, Plaintiff's claims fail as a matter of law and shall be dismissed. Accordingly, **IT IS ORDERED**

(1) that Defendant's Motion to Strike, [DE 24], is **GRANTED**, and DE 21 and 21-1 **SHALL** be stricken from the record; and

(2) that Defendant's Motion for Summary Judgment, [DE 17], is **GRANTED**.

This the 1st day of June, 2015.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge